# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH A. BALLARD,

      Petitioner,

  v.

FRANK KENDALL, III[1]

      Respondent.

Civil Action No. 21-cv-02288 (CKK)

## <u>MEMORANDUM OPINION</u>

On August 31, 2016, Petitioner, Joseph A. Ballard voluntarily retired from the United States Air Force.  *See* Petition ("Pet."), ECF No. 1, at 10;[2] *See* Pet. Exhibits ("Pet. Exs."), ECF No. 1-1, at Pet. Ex. A (Aug. 31, 2016 Cert. of Release).  In April 2017, Ballard was recalled to active duty, pursuant to 10 U.S.C. §§ 688(b)(1), 802(a)(4), so that he could be tried by court-martial.  *See* Pet. at 10; Pet. Ex. B (Apr. 11, 2017 Recall Memorandum Approval); Pet. Ex. C (Apr. 20, 2017 Air Force Special Recall Order).  Ballard was charged with committing multiple violations of the Uniform Code of Military Justice ("UCMJ") based on events that occurred while he was stationed in Japan and Korea.  *See* Pet. at 11; *see also United States v. Ballard*, 79 M.J. 675, 676–78 (A.F. Ct. Crim. App. 2019).  Ultimately, in 2017, before a general court-martial, Ballard pleaded guilty to multiple offenses of the UCMJ, arising from his sexual abuse of three minors, including his daughter.  *See Ballard*, 79 M.J. at 676–78.  Ballard was sentenced to 50 years imprisonment, which was later reduced to 40 years based on a pre-trial agreement.  *See id*. at 676.

---

[1]    The current United States Secretary of the Air Force is automatically substituted as Respondent in his official capacity for his predecessor pursuant to Fed. R. Civ. P. 25(d).

[2]    The Court refers to the ECF-generated page numbers in citing to the Petition.

Proceeding *pro se*, Ballard has filed a Petition for a Writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Pet. at 1, 8, 13. Respondent, the Secretary of the Air Force ("Air Force"), has moved to dismiss the Petition. *See generally* Motion to Dismiss ("MTD"), ECF No. 10, and Memorandum in Support ("MTD Mem."), ECF No. 10-1.[3] On July 11, 2022, Ballard filed a combined Opposition and Reply to the Air Force's Response to Show Cause ("Opp'n"), ECF No. 13, to which the Air Force filed a Reply ("Reply"), ECF No. 18.

For the reasons explained below, the Court will grant the Air Force's Motion to Dismiss, dismissing this matter for want of subject matter jurisdiction, failure to state a claim, and improper venue.

## I. PROCEDURAL & FACTUAL BACKGROUND

Ballard enlisted in the Air Force in 1995. *See* Pet. Ex. A. He remained on active duty for over 21 years. *See id*. According to Ballard, in January 2016, he was ordered for an examination by a Medical Evaluation Board ("MEB"), and was found to have an 85% loss in hearing. Pet. at 10. After that preliminary assessment, Ballard did not proceed to the next stage of the Air Force's medical fitness assessment—i.e., before the Physical Evaluation Board ("PEB")—because in the interim, he applied for voluntary retirement, which was then approved. *See id*.; *see also* Pet. Ex. A. At some unknown time after Ballard's retirement on August 31, 2016, Ballard claims that the Department of Veterans Affairs ("VA") assessed him with a preliminary 35% overall disability rating due to arthritis in his wrists and an injury to his shoulder. *See* Pet. at 10. However, Ballard contends that the VA's disability assessment, which was still in progress, was interrupted by his recall to active duty for his trial by court-martial. *See id*.

---

[3]     The Air Force has also filed a separate Response, ECF No. 11, to the Court's Order to Show Cause, ECF No. 3, which is identical to the Memorandum in support of its Motion to Dismiss.

More specifically, on April 11, 2017, the Secretary of the Air Force approved Ballard's recall by issuance of a Memorandum, *see* Pet. Ex. B, and on April 20, 2017, the Air Force issued a Recall Order, *see* Pet. Ex. C. Ballard takes issue with much of this administrative process, complaining that he was not served with the Recall Order until his arrest on May 15, 2017, though he received it in less than 30 days, and it is unclear why he expected to receive it earlier. *See* Pet. at 10–11. He also speculates that the Secretary's Memorandum was forged. *See id.* at 10, 12. He goes on to refer to his arrest as a "kidnapping," alleging that it was made under false pretenses by the Air Force Office of Special Investigations and Air Force Security Forces, without any involvement of local law enforcement or the United States Marshals Service. *See id.* at 11. He also takes issue that he was unable to return to his home before being transported to Little Rock Air Force Base. *See id.* Ballard fails to cite to any authority that would have required either the involvement of local or federal law enforcement in his arrest, or his return home prior to his detainment. *See id.*

While awaiting his court martial at Little Rock Air Force Base, Ballard states that he was placed in solitary confinement, and that he endured several hardships, including, a restricted diet, lack of access to legal materials, and that he was limited to phone contact with his attorneys. *See id.* He also alleges that, during this time, unspecified individuals threatened potential witnesses, ostensibly favorable to the defense. *See id.* The week of his court martial, in late October 2017, Ballard met in person with his attorneys. *See id.* He insinuates that he had insufficient legal representation, that he was coerced into pleading guilty, and that the evidence against him was somehow insufficient because it was predicated on the "statements of the alleged victims." *See id.* He also states that he did not receive active duty pay until the week of his court martial, but was receiving retired pay. *See id.* at 3, 10; *see also* Pet. Ex. A.

After Ballard pleaded guilty and was sentenced, he was transferred to the U.S. Disciplinary Barracks, in Fort Leavenworth ("Fort Leavenworth") Kansas, where he has remained incarcerated to date.  *See* Pet. at 11.  He appealed his conviction to the U.S. Air Force Court of Criminal Appeals, arguing that the court martial lacked jurisdiction over his criminal proceedings under the UCMJ because he was retired from military service at the time of the proceeding, and was receiving retired pay and benefits, not active pay.  *See id.*; *Ballard*, 79 M.J. at 679–80.  On September 30, 2019, the Air Force Court of Criminal Appeals affirmed the court martial's determinations, *see* Pet. at 11, finding that Ballard "was undoubtedly a retired member of the regular Air Force entitled to retired pay at the time he was recalled to active duty for purposes of facing a court-martial.  He committed all of the offenses to which he pleaded guilty while on active duty[,]" and "Congress acted well within the authority entrusted to them by the Constitution's Make Rules Clause when they permitted court-martial jurisdiction of retired members of a regular component of the armed forces who are entitled to pay in Article 2(a)(4)[,]" *Ballard*, 79 M.J. at 681 (collecting substantially similar cases) (fn. omitted).  On January 14, 2021, the United States Court of Appeals for the Armed Forces denied Ballard's Petition for Grant of Review.  *See* Pet. at 12; *United States v. Ballard*, 79 M.J. 420, 420 (CAAF 2020).

Here, Ballard seeks relief pursuant to § 2241, as a "collateral challenge of [his] general court martial proceedings[,]" and he demands his immediate release from confinement at Fort Leavenworth.  *See* Pet. at 1, 8, 13–14.  In his Petition, he raises comparable arguments to the ones he raised before the U.S. Air Force Court of Criminal Appeals, contending again that, due to his retired status, the Air Force was without jurisdiction under the UCMJ to recall him and subject him to court-martial, rendering his conviction and sentence "unconstitutional, void, and without legal effect."  *See id.* at 1–8, 13.

## II. LEGAL STANDARDS

**Dismissal Standards**

The Air Force moves to dismiss pursuant to Federal Rules 12(b)(3) and (b)(6).  *See* MSJ Mem. at 1–9.  The Court also independently finds cause to dismiss this matter pursuant to Federal Rule 12(b)(1).  *See* Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss an action "at any time" if it determines that the subject matter jurisdiction is wanting).

In assessing whether a petitioner has failed to state a claim, or whether a court if want of subject matter jurisdiction, a court must "treat a [petition's] factual allegations as true . . . and must grant a petitioner 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Where an action is brought by a *pro se* petitioner, a district court has an obligation "to consider his filings as a whole before dismissing a [petition]," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), because *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers[,]" *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, a court need not accept inferences drawn by a petitioner if those inferences are unsupported by the facts alleged, nor must the court accept a petitioner's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

i.    Subject Matter Jurisdiction

 The evaluation under Federal Rule 12(h)(3) "is subject to the same standards as a Rule 12(b)(1) motion to dismiss for lack of jurisdiction."  *Southern Poverty Law Cntr. v. U.S. Dep't of Homeland Sec.*, No. 18-0760, 2022 WL 1801150, at *3 (D.D.C. Jun. 2, 2022) (citing *Murray v.*

*Amalgamated Trans. Union*, 206 F. Supp. 3d 202, 207 (D.D.C. 2016)).  Under Rule 12(b)(1), a petitioner bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002), *aff'd*, 409 F.3d 414 (2005), 546 U.S. 1173 (2006).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F. 3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

As part of its inquiry into of subject matter jurisdiction, the court may consider documents outside the pleadings to assure itself that it has jurisdiction.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (holding same); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.)."  By considering documents outside the pleadings, the court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when documents extraneous to the pleadings are considered by a court.  *Haase*, 835 F.2d at 905.

    ii.    <u>Failure to State a Claim</u>

In order to survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a [petition] is inapplicable to legal conclusions."  *Id.* at 678.  "Second, only a [petition] that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that [respondent] is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [respondent] has acted unlawfully."  *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the [petition], documents attached as exhibits or incorporated by reference in the [petition] and matters about which the Court may take judicial notice."  *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

iii.   <u>Venue</u>

Under Fed. R. Civ. P. 12(b)(3), a party may move to dismiss a case for improper venue. Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires that a district court dismiss or transfer a case that is filed "in the wrong division or district."  Together, "Section 1406(a) and Rule

12(b)(3) allow dismissal only when venue is 'wrong' or 'improper' . . . in the forum in which [the case] was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 50 (2013).  "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws[.]" *Id.*

The moving party objecting to venue must provide "sufficient specificity to put the [petitioner] on notice of the defect" that the case fails to fall within one of the three categories set out in § 1391(b). 14D Charles Alan Wright, *et al*., Fed. Practice and Procedure § 3826 at 496 (4th ed. 2013).  Nonetheless, the burden remains on the petitioner to establish that venue is proper since it is " 'the [petitioner's] obligation to institute the action in a permissible forum . . .' " *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); *see also Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (citing 14D Charles Alan Wright, *et al*., Fed. Practice and Procedure § 382, at 502, 505–06) ("[W]hen [an] objection has been raised, the burden is on the [petitioner] to establish that the district he [or she] chose is a proper venue [,] . . . consistent with the [petitioner's] threshold obligation to show that the case belongs to the particular district court in which the suit has been instituted.")).

In assessing a motion for improper venue, the court " 'accepts the [petitioner's] well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the [petitioner's] favor and resolves any factual conflicts in the [petitioner's] favor.' " *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014), *aff'd sub nom.*, *McCain v. Bank of Am. N.A.*, 602 Fed. Appx. 836 (D.C. Cir. 2015) (quoting *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011) (other citations omitted)); *see also Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)). "The Court, however, need not accept the [petitioner's] legal conclusions as true,

and may consider material outside the pleadings, including undisputed facts evidenced in the record[.]" *Ananiev*, 968 F. Supp. 2d at 129 (quoting *Ebron v. Dep't of Army*, 766 F. Supp. 2d 54, 57 (D.D.C. 2011); citing *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (1992); *Haley v. Astrue*, 667 F. Supp. 2d 138, 140 (D.D.C. 2009)).

### Habeas Petitions & Military Prisoners Challenging a Court Martial Proceeding

Generally, a civilian federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence," must file a motion under § 2255 in "the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a); *Day v. Trump*, 860 F.3d 686, 691 (D.C. Cir. 2017), *cert. denied*, 138 S.Ct. 1338 (2018).

A "federal prisoner may resort to § 2241 to contest his conviction if but only if the § 2255 remedial mechanism is 'inadequate or ineffective to test the legality of his detention.' " *Prost v. Anderson*, 636 F.3d 578, 580 (10th Cir. 2011) (quoting 28 U.S.C. § 2255(e)), *cert. denied*, 565 U.S. 1111 (2012). Section 2241 allows a court to grant writs of habeas corpus to prisoners "in custody" only "within their respective jurisdictions." *See* 28 U.S.C. §§ 2241(a), (c). A writ of habeas corpus specifically acts upon the individual physically holding the prisoner in custody, rather than upon the prisoner himself. *Dillon v. Wormuth*, No. 21-cv-02124, 2022 WL 971087, at *2 (D.D.C. Mar. 31, 2022) (citing *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir. 2004)). For that reason, under the "immediate custodian rule," "a court may issue the writ only if it has jurisdiction over the person doing the confining." *Id.* (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 437, 441 (2004) (noting that a § 2241 habeas petitioner seeking to challenge his present

physical custody within the United States "should name his warden as respondent and file the petition in the district of confinement")).

Military members, unlike civilians, are generally tried by court martial, and court martials can hear cases "involving a wide range of offenses, including crimes unconnected with military service." *Ortiz v. United States*, 138 S. Ct. 2165, 2170 (2018). "The court martial proceeding itself is 'an officer-led tribunal convened to determine guilt or innocence and levy appropriate punishment.'" *Dillon*, 2022 WL 971087, at *2 (citing *Ortiz*, 138 S. Ct. at 2170; 10 U.S.C. §§ 816, 818, 856a). "An order from a commanding officer calls the *ad hoc* tribunal into existence." *Id.* (citing *Ackerman v. Novak*, 483 F.3d 647, 651 (10th Cir. 2007)). "Once convened, the tribunal considers the 'set of charges that the commander has referred to' it." *Id.* (citing *Ackerman*, 483 at 651). "And the tribunal dissolves after the purpose for which it convened has been resolved." *Id.* (citing *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004)).

Consequently, "[a] petitioner convicted and sentenced by a court martial cannot rely on § 2255 to launch a collateral attack on his conviction or sentence because that tribunal dissolved once the proceedings concluded." *Id.* at 3 (citing *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1110 (11th Cir. 2017)). Therefore, a military petitioner may rely on § 2241 in bringing a collateral challenge because § 2255 is unavailable, or in other words, is an "inadequate or ineffective to test the legality of [one's] detention." *See id.* (quoting 28 U.S.C. § 2255(e); citing *Brown v. Sec'y of the U.S. Army*, 859 F. App'x 901, 901 (11th Cir. 2021) (per curiam)). Simply put, "a petition for habeas relief under § 2241, rather than a motion under § 2255, represents the proper 'vehicle for district-court review of a military conviction.'" *Id.* (quoting *Youngberg v. Watson*, No. 19-1140, 2021 WL 2815412, at *1 (7th Cir. Mar. 5, 2021); citing *Prost*, 636 F.3d at 588; *Gilliam v. Bureau of Prisons*, 208 F.3d 217, 217 (8th Cir. 2000)

(table) (per curiam) ("[A] person convicted in a court-martial proceeding may not file a section 2255 challenge in the court of conviction because, following conviction, that court ceases to exist."); *Beras v. Johnson*, 978 F.3d 246, 260 (5th Cir. 2020) (noting that § 2241 is used for habeas challenges to military convictions); *Clinton v. Goldsmith*, 526 U.S. 529, 538 n.11 (1999) (noting that "once a criminal conviction has been finally reviewed within the military system, and a servicemember in custody has exhausted other avenues provided under the UCMJ to seek relief from his conviction . . . he is entitled to bring a habeas corpus petition [under] 28 U.S.C. § 2241(c)")).

### III.  DISCUSSION

The Court finds that it is want of subject matter jurisdiction over Ballard's claims.

*First*, Ballard predominantly contends that this District may exercise subject matter jurisdiction pursuant to § 2241, *see* Pet. at 8, 13, but he is mistaken.  Ballard "remains incarcerated at the Disciplinary Barracks in Fort Leavenworth, Kansas . . . [and] claims that his [conviction] [and] sentence suffer[] from jurisdictional infirmities, and he attacks these infirmities with a habeas petition filed under 28 U.S.C. 2241." *Dillon*, 2022 WL 971087, at *3; *see also* Pet. at 1, 8, 13. Consequently, and as discussed above, the proper respondent in a § 2241 habeas action is a prisoner's present custodian.  *See Padilla*, 542 U.S. at 434–35; *Blair–Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998).  And here, it is without question that Ballard's present "custodian is the commandant of" Fort Leavenworth, *see Monk v. Secretary of Navy*, 793 F.2d 364, 368–69 (D.C. Cir. 1986), and not, despite Ballard's contentions, *see* Pet. at 8, 13; Pet. Exs. at Motion for Venue ¶ 3, the Secretary of the Air Force, *see Dillon*, 2022 WL 971087, at *3 (citing *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988) (en banc)).  This Court cannot exercise subject matter jurisdiction over Ballard's § 2241 Petition, and has no discretion in doing so, "unless the

respondent custodian is within its territorial jurisdiction." *Stokes*, 374 F.3d at 1239. Ballard's custodian is in Fort Leavenworth, Kansas, and such, this case should be filed in the District of Kansas, and against that custodian.[4] *See Dillon*, 2022 WL 971087, at *2–3 (dismissing petition for want of subject matter jurisdiction and venue where the petitioner, also confined at Fort Leavenworth, Kansas, challenged his conviction by court-martial on several counts of sexual abuse of minors under the UCMJ, and argued that his conviction was void and unconstitutional because he was in the process of retiring due to disabilities sustained while enlisted with the Army).

In response, Ballard first reiterates the same arguments presented in his Petition. *See* Opp'n at 1–3. He then argues, circularly and self-servingly, that because his recall, arrest, and conviction, were all unlawful, "it leaves the question open-ended as to the proper Respondent in this case[,]" and he maintains that, because he allegedly has no valid immediate custodian, the question then becomes who exercises "legal control" over him; his answer to that question is the Secretary of the Air Force. *See id.* at 2–3. In support, he argues that *Padilla*, 542 U.S. 426, is inapplicable to him, citing to *Ex Parte Endo*, 323 U.S. 283 (1944), in an attempt to prove that he does not have an immediate custodian. *See* Opp'n at 3. In *Endo*, the petitioner, seeking her release from a Japanese

---

[4]     The Air Force also moves to dismiss for want of personal jurisdiction, pursuant to Federal Rule 12(b)(2), over Ballard's custodian at Fort Leavenworth. *See* MSJ Mem. at 1, 3, 6. It is ostensibly "evident that th[is] District Court would not have personal jurisdiction over" Ballard's custodian, *see Chatman-Bey*, 864 F.2d at 813, *id.* at n.7 (noting that "[a]lthough 28 U.S.C. § 1391(e) generally provides for nationwide service on officers of the United States, this basis of personal jurisdiction is unavailable in habeas) (citing *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971)), "[b]ut this need not detain us," because this Court is dismissing this matter on other superseding grounds, *see id.* at 813. Furthermore, regardless of the near certainty, it is unclear that the Air Force has standing to bring a 12(b)(2) defense on behalf of Ballard's custodian, who is not named as a party to this case, and this Court is without the necessary "relevant matter" required to "assist in determining the [personal] jurisdictional facts[,]" *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000); *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005), to determine if personal jurisdiction—general or specific—could be exercised over Ballard's custodian, *see Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); D.C. Code §§ 13–422, 423.

internment camp in California, filed a petition for habeas corpus in the District of California, but thereafter, the War Relocation Authority transferred her to another state. *See Endo*, 323 U.S. at 284–85. The Supreme Court held that the District of California retained jurisdiction over the matter, *see id.* at 304–07, standing "for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release[,]" *Padilla*, 542 U.S. at 440 (citing to and explaining the holding of *Endo*, 323 U.S. at 304–05, 307). The facts in *Endo* are patently incongruent to those presented in this matter. Ballard was never designated to a facility in this District, nor was he ever transferred from this District to another—or from any District to another—while his Petition was pending, or otherwise.

Ballard next cites to a progeny of cases, and like *Endo*, they all notably predate *Padilla*. *See* Opp'n at 3–4, 6–7 (citing several Vietnam-era cases). He cites first, *see* Opp'n at 3–5, to *Schlanger*, 401 U.S. at 488–89, in which the petitioner, a non-incarcerated active serviceman who was on temporary duty orders in Arizona, challenged his subsequent transfer order to Moody Air Force Base, in Georgia. The Supreme Court found that, for purposes of jurisdiction and venue, the petitioner was under the custody and control of his commanding officer at Moody AFB because the petitioner was neither a resident of Arizona nor amenable to its process, and no one in chain of command over the petitioner was in territorial jurisdiction of the District of Arizona. *See id.* at 489–92.

Next, Ballard cites to *Strait v. Laird*, 406 U.S. 341 (1972), *see* Opp'n at 3, which involved an army reservist whose active-duty obligations were deferred while he attended law school, *see Strait*, 406 U.S. at 341–42. The petitioner's military records, and nominal commanding officer,

were located at Fort Benjamin Harrison, Indiana, *see id.*, but the officer was not "responsible for the day to day control of his subordinates," and was instead in charge of primarily administrative decisions as to "unattached reservists," *see id.* at 345. The petitioner was, at all times, domiciled in California, and during his deferment, he filed an application for discharge as a conscientious objector in California. *See id.* at 342. Following the application's denial, the petitioner sought a writ of habeas corpus. *See id.* The Supreme Court found that, because the petitioner always resided in California and his application for discharge was processed there, jurisdiction was proper in the District of California. *See id.* at 343–46. The *Strait* Court also found that requiring the case to proceed in the District of Indiana would improperly "result in a concentration of similar cases in the district in which the Reserve Officer Components Personnel Center is located[,]" when indeed, the case should properly proceed elsewhere. *See id.* at 345.

Quite similarly, in *Eisel v. Secretary of the Army*, 477 F.2d 1251 (D.C. Cir. 1973), cited by Ballard, *see* Opp'n at 3, 7, the petitioners, a commissioned inactive Army reservist and a commissioned inactive Air Force reservist, sought release from military orders on grounds that they were conscientious objectors and, when their applications were denied, they filed for writs of habeas corpus, *see Eisel*, 477 F.2d at 1253. The D.C. Circuit held that this District was want of jurisdiction, and that the matter should be heard in the districts where the petitioners were respectively domiciled. *See id.* at 1266. The *Eisel* Court stressed that, despite the location of military headquarters and high-ranking officials in this District—including the Secretaries of the Army and the Air Force—this forum was nonetheless improper because the petitioners' relationship to the military located in the District of Columbia was no different from any other member of the military, and their significant contacts with the military were elsewhere. *See id.* at 1255–56. Moreover, allowing such an interpretation of jurisdiction and venue would be contrary

to law, creating an influx of unsuitable cases filed by service members in this District. *See id.* at 1256.

Ballard also cites to *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973). *See* Opp'n at 6. *Braden* stands for the proposition that the immediate physical custodian rule, by its terms, does not necessarily apply when a habeas petitioner challenges something *other than* his conviction and present physical confinement. *See Braden*, 410 U.S. at 488–89, 494–95; *see also Padilla*, 542 U.S. at 438 (explaining that the petitioner in *Braden* "did not contest the validity of the Alabama conviction for which he was confined, but instead challenged a detainer lodged against him in Kentucky state court[,]" and that "nothing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement.") (other citations omitted).

Last, Ballard cites to a series of additional similar cases from outside circuits, *see* Opp'n at 3, starting with *Lantz v. Seamans*, 504 F.2d 423 (2d Cir. 1974) (per curiam), in which the Second Circuit held that the petitioner—who was not incarcerated and challenged the Secretary of the Air Force's denial of his application for a discharge as a conscientious objector—should file his petition for writ of habeas corpus in the District where he was domiciled, *see id.* at 424. In *Arlen v. Laird*, 451 F.2d 684 (2d Cir. 1971), *see* Opp'n at 3, the Second Circuit arrived at the same conclusion with analogous facts involving an unattached reservist in New York, *see Arlen*, 451 F.2d at 685–87. And the First Circuit, in *Carney v. Sec'y of Def.*, 462 F.2d 606 (1st Cir. 1972), *see* Opp'n at 3, found that an un-incarcerated service member, also seeking conscientious objector status, should file his petition for writ of habeas corpus where he was located, and not in the District where he was ordered to be transferred and inevitably dispatched to Vietnam, *see Carney*, 462 F.2d at 606–07.

As argued by the Air Force, *see* Reply at 4–7, all of the cases cited by Ballard are inapposite to his circumstances.  Nearly all of the cases involve non-prisoner petitioners, challenging—not the constitutionality of their incarceration, but instead—the terms of military orders, often transfer orders to new jurisdictions, from commanding officers in yet different jurisdictions.  With more than one forum at play, and with the petitioner's location in flux, these cases necessitated an analysis as to which jurisdiction and venue were most appropriate.  However here, Ballard *is* incarcerated, and he *is* challenging his conviction and resulting present confinement, *see* Pet. at  1, 8, 14, therefore, the immediate custodian rule is traditionally applied without exception because there is absolutely *no ambiguity* as to his location, immediate custodian, and the relief sought. Even if there was some ambiguity, this District *would still* be improper under the cases cited by Ballard.  Those cases hold, in large part, that if a petitioner lacks a clear present custodian, based on existing factors—most importantly, convenience—the proceedings should generally be held where the petitioner is located.  *See, e.g.*, *Straight*, 406 U.S. at 345–46; *Braden*, 410 U.S. at 500– 01; *Eisel*, 477 F.2d at 1254–56, 1265; *Arlen*, 451 F.2d at 687; *Lantz*, 504 F.2d at 424; *Carney*, 462 F.2d at 606–07.

Thus, assuming *arguendo* the cases cited by Ballard were applicable, which the Court does not concede, those cases *would still* position this case where Ballard is located—i.e. the District of Kansas, *see Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 417 (D.D.C. 2020), *aff'd*, No. 20-5103, 2021 WL 2525679 (D.C. Cir. Jun. 2, 2021) (citing *In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978); *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013)), and if not that District, *perhaps* alternatively, in the District of Arkansas, *see Turner v. Kelly*, 411 F. Supp. 1331, 1332 (D. Kan. 1976); *see* Pet. at 11; Opp'n at 1, 7 (stating that Ballard was domiciled in Arkansas prior to his arrest).  Regardless, Ballard's case law simply does not support jurisdiction or venue

in this District under any interpretation.  If anything, the cases serve as warning to petitioners like Ballard that suit against a military branch or high-ranking military official does not necessitate venue or jurisdiction in the District of Columbia,[5] and indeed doing so would "exalt fiction over reality."  *See Strait*, 406 U.S. at 344–46; *see also Eisel*, 477 F.2d at 1255–56.

And Ballard's arguments that his arrest, conviction, and present incarceration are illegal, therefore somehow negating his custodian at Fort Leavenworth, *see* Opp'n at 2–3, 5–6, is not only unsupported by any legal precedent, but is also an improper attempt to prematurely impose and conflate a merits argument upon a preliminary jurisdiction and venue analysis.  In support of this argument, Ballard relies on criminal statutes, *see id.* at 1–2 (citing 18 U.S.C. § 1385), *id.* at 4–5 (citing 18 U.S.C. § 4001(a)), that neither support a private right of action nor afford the type of relief that he seeks, *see United States v. Khatallah*, 160 F. Supp. 3d 144, 148–50 (D.D.C. 2016) (explaining that there is no private right of action under § 1385); *see Bailey v. BOP*, 133 F. Supp. 3d 50, 54–55 (D.D.C. 2015) (explaining that there is no private right of action under § 4001(a)).

As such, and for all of these reasons, the Court finds that this District lacks subject matter jurisdiction over Ballard's Petition.

*Second*, Ballard asserts that this Court has federal question jurisdiction under the Fifth Amendment, based on his ancillary facial constitutional challenge to 10 U.S.C. §§ 688(b)(1) and 802(a)(4), *see* Pet. at 8, 12–13, more specifically, the Air Force's ability to recall him under those provisions, *see id.* at 1–8.  "But it is this Court that lacks jurisdiction over [Ballard's] §2241 petition

---

[5]      As noted by the Air Force, again assuming for the sake of argument that the case law cited by Ballard were somehow applicable here, *see* Reply at 7 n.5, and also assuming that the Secretary of the Air Force was somehow hypothetically Ballard's present custodian, this District would *yet still* be improper because the Secretary of the Air Force resides at the Pentagon, located in Arlington, Virginia.  *See* 28 U.S.C. § 1391(e)(1)(A); *see also, e.g., Chin-Young v. Esper*, No. 18-2072, 2019 WL 4247260, at *5 (D.D.C. Sept. 6, 2019) ("The Court takes judicial notice . . . that the Pentagon is located in Arlington, Virginia[, despite its Washington, D.C. mailing address].").

because he failed to bring his habeas petition in the jurisdiction where the proper respondent resides.  The Court, as it must, declines to pass on the merits of [Ballard's] [constitutional] arguments." *Dillon*, 2022 WL 971087, at *3 (finding that the court could not exercise subject matter jurisdiction over the petitioner's "Fifth Amendment procedural due process challenge[,]" embedded in his § 2241 petition, "on the basis that he had retired from the military at the time of the court-martial proceeding and that the military tribunal therefore lacked jurisdiction over him.").

By and through his constitutional challenge, Ballard seeks an order striking § 802(a)(4) and enjoining its enforcement, including a finding that the use of the provision violated his Fifth Amendment rights, thus enabling his immediate release from "illegal confinement" at Fort Leavenworth.  *See* Pet. at  1, 14.  He argues that, as a military retiree, who was entitled to, and receiving, "retired pay" from the Department of Treasury and Department of Defense Military Fund, rather than "active duty pay" directly from the Air Force, he should not be subject to recall, because as an inactive servicemember his criminal case did not arise "in the land or naval forces." *See* Pet. at 1–8, 12–13; *see also* U.S. CONST. amend. V.  Despite his reliance on the Fifth Amendment, Ballard's stated relief, if granted, would still result in his "immediate release from prison . . . fall[ing] squarely 'within the core of habeas corpus.' " *See Monk*, 793 F.2d at 367 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487, 500 (1975) (holding that when a prisoner is challenging "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.")).  Consequently, Ballard cannot circumvent the parameters of § 2241 by raising a fallback constitutional challenge, in an attempt to reach the same outcome.

Furthermore, presupposing that Ballard could even raise this Fifth Amendment challenge, he has failed to state a claim because it has already been foreclosed by clear District of Columbia Circuit precedent. A substantially similar challenge was recently reviewed by the D.C. Circuit. *See Larrabee v. Del Toro*, 45 F.4th 81 (2022). In *Larrabee*, the plaintiff, a "de facto" retiree in the Fleet Marine Reserve, *see id.* at 84, who pleaded guilty before a court-martial to sexual assault of civilian, *see id.* at 83, did not bring a habeas claim, but raised constitutional challenges to 10 U.S.C. § 802(a)(6), including under the Fifth Amendment, *see id.* at 85–86, and argued that his status as a reservist and his receipt of retired pay—or "retainer pay"—rather than active pay, should exclude him from recall under the UCMJ, and that therefore, the court martial was without jurisdiction to convict him, *see id.* at 84, 86, 96. The trial court ruled in favor of Larrabee, *see Larrabee v. Braithwaite*, 502 F. Supp. 3d 322, 333 (D.D.C. 2020), but on appeal, the D.C. Circuit reversed in full, citing a long line of Supreme Court precedent "interpreting the Make Rules Clause, as well as historical evidence from the Founding era, [which] both indicate that Congress may extend court-martial jurisdiction" over a military retiree, so long as they have "a formal relationship with the military that includes a duty to obey military orders[,]" *see Larrabee*, 45 F.4th at 101. The D.C. Circuit went on to state that,

> [i]ndeed, as early as 1881, in *United States v. Tyler*, the Court found that while retirees are "not required to perform full service, they are [still] part of the army, and may be assigned to such duty as the laws and regulations permit." 105 U.S. 244, 245, 26 L.Ed. 985 (1881); *cf. Thornley v. United States*, 113 U.S. 310, 315, 5 S.Ct. 491, 28 L.Ed. 999 (1885) ("The point on which [*Tyler*] turned was ... that an officer of the army, though retired, was still in the service."). [T]he Supreme Court and this court's predecessor have both affirmed court-martial sentences imposed on military retirees without questioning the constitutionality of the military proceedings. *See United States v. Fletcher*, 148 U.S. 84, 13 S.Ct. 552, 37 L.Ed. 378 (1893); *United States v. Page*, 137 U.S. 673, 11 S.Ct. 219, 34 L.Ed. 828 (1891); *Closson v. United States ex rel. Armes*, 7 App. D.C. 460 (1896). . . . [T]he Court's consistent and repeated acknowledgement that military retirees are properly regarded as members of the armed forces,

> rather than civilians, substantiates our conclusion that Fleet Marine
> Reservists [,][like military retirees][,] fall within the "land and naval
> Forces" governed by the Make Rules Clause.

*Id.* at 97.  Furthermore, the D.C. Circuit held that "the scope of the Grand Jury Clause's exception is coextensive with that of the Make Rules Clause. Because Larrabee was[,]" even as a retired service member, "in 'the land and naval Forces' at the time of his court-martialing, his 'case[ ] ar[ose] in the land or naval forces[.]' " (quoting U.S. CONST. art. I, § 8, cl. 14; *id.* at amend. V).

This Court notes that, while Larrabee was a reservist, and Ballard is a retiree, this is a distinction without difference.  As explained above, the D.C. Circuit plainly found that a reservist is, for all intents and purposes, a retiree, *see id.* at 84, 96–98, and furthermore, under 10 U.S.C. § 688, a reservist is treated in the same manner as a retiree as it relates to a recall, including recall for purposes of court martial, *compare id.* at § 688(b)(1), *with id.* at § 688(b)(3); *also compare* 10 U.S.C. § 802(a)(4), *with id.* at § 802(a)(6).  Ballard, as a retired service member who is entitled to and was receiving retired pay, among other benefits, had an undisputable relationship with the Air Force and a continued duty to obey military orders.  *See* Pet. at 1–5, 7, 10 ; Pet. Ex. A; *see Larrabee*, 45 F.4th at 96–97 ("the Supreme Court has recognized military retirees as part of the nation's armed forces.") (collecting cases).  Therefore, for the reasons stated in *Larrabee*, upholding the parallel provision, § 802(a)(6), against an equivalent Fifth Amendment challenge, Ballard's challenge must also fail.  Any finding otherwise would contradict the law of the D.C. Circuit.

Ballard references the *Larrabee* case, though it is clear that he is citing to the trial court's decision, rather than that of the D.C. Circuit, *see* Opp'n at 5–6 (citing *Larrabee*, 502 F. Supp. 3d at 322), which is understandable because the Circuit reversed shortly after Ballard filed his Opposition in this matter, *see generally Larrabee*, 45 F.4th at 81 (decided on Aug. 2, 2022).

Notwithstanding, Ballard cannot escape that he is relying on now outmoded law.  He seemingly attempts to differentiate his circumstances from those in *Larrabee* by arguing that he and others like him, who are or may be entitled to VA permanent disability benefits under 38 U.S.C. §§ 1110, 1131, and 3102, should be specifically excluded from recall under 10 U.S.C. § 802(a)(4).  *See* Pet. at 1–3, 6–8, 10, 13.  He seems to argue that disabled or potentially disabled retired service members should be excluded from recall for court martial—and added to the list of exempt service members identified in 10 U.S.C. § 688(d)—because it is unlikely that disabled retirees would otherwise be recalled to active service.  *See id*.  This argument is unpersuasive.

Notably, Ballard did not retire based on disability.  *See id.* at 10; Pet. Ex. A; *see also* 10 U.S.C. Ch. 61.  He contends that he was diagnosed with some hearing loss by the Air Force, and that he was in the process of being assessed for fitness, but during that process, he elected to, applied for, and received, a voluntary retirement.  *See* Pet. at 10; Pet. Ex. A.  Ballard admits that he only completed the first step of a multi-step process in assessing his then fitness for service.  *See* Pet. at 10*; see also Torres v. Del Toro*, No. No. 21-cv-306, 2022 WL 5167371, at *1–2 (D.D.C. Oct. 5, 2022) (citation omitted) (describing and including a detailed diagram of Disability Evaluation System process and explaining that "[t]he Disability Evaluation System ('DES'), created by the DoD, governs the process for servicemembers facing separation or retirement due to disability[] . . . [and] [t]hat system involves several steps that together determine whether a servicemember is unfit to continue serving."); *Havens v. Mabus*, 146 F. Supp. 3d 202, 205–06 (D.D.C. 2015) (citing *Havens v. Mabus*, 759 F.3d 91, 93 (D.C. Cir. 2014) (also explaining the DES process in which a service member is determined to be fit or unfit for duty)), *aff'd*, No. 16-5016, 2016 WL 4098840 (D.C. Cir. Jul. 22, 2016).  As noted by Ballard, *see* Pet. at 10, an assessment by the MEB is the first step, thereafter, an Informal Physical Evaluation Board ("IPEB"), or yet

21

later, a Formal Physical Evaluation Board ("FPEB") must actually address whether a service member is unfit to serve due to a disability, *see Torres*, 2022 WL 5167371, at \*2.

Moreover, even if Ballard *had* retired based on disability it does not necessarily mean that he could not be recalled.  Even if a service member "is finally determined to be unfit for duty and is retired for physical disability, the member retains military status and may be recalled to active duty under certain circumstances."  *U.S. v. Stevenson*, 53 M.J. 257, 260 (Armed Forces App. 2000) (citing cases), *cert. denied*, 532 U.S. 919 (2001); *see U.S. v. Reynolds*, No. 201600415, 2017 WL 1506062, at \*4–5 (Navy-Marine Crim. App. Apr. 27, 2017) (explaining in detail that the Department of Defense Regulations, implementing 10 U.S.C. § 688, specifically authorize recalling permanently disabled retirees); *see also Larrabee*, 45 F.4th at 96–97 (finding that "it is not open to question . . . that [retired] officers are [still] officers in the military service of the United States.") (quoting *Kahn v. Anderson*, 255 U.S. 1, 6–7 (1921) (internal quotation marks omitted)).  Though Ballard states that the VA, at some point after his retirement, initially found him to be 30% disabled, he believes that he will, by the end of the assessment process, be assessed at 100% disability.  *See* Pet. at 7.  Even taking this presumption at face value, it does not prove that Ballard was 100% disabled at the time of his retirement.  *See Banerjee v. United States*, 77 Fed. Cl. 522, 537 (Fed. Cl. 2007).  To that end, the VA and Air Force have different standards for determining whether a service member is disabled, or unfit for military service, respectively.  "The VA operates under title 38.  It compensates former service members based on the likelihood that a disability will make it difficult for them to seek civilian employment in the future.  The Air Force, on the other hand, operates under title 10.  It rates and compensates members based on their ability to perform their then-present Air Force duties. These two systems thus operate under different statutory authorities and rate member's disabilities based under different standards."  *Fisher v.*

*United States*, 72 Fed. Cl. 88, 94–95 (Fed. Cl. 2006).  And the Court is not in a position to speculate as to Ballard's level of fitness or unfitness at the time of his retirement.

*Third*, Ballard contends that this Court has subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.  *See* Pet. at 8, 13–14.  The Declaratory Judgment Act, however, is not an independent basis for jurisdiction. *See Porzecanski v. Azar*, 943 F.3d 472, 485 n.11 (D.C. Cir. 2019).  Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (quoting *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (other citations and internal quotation marks omitted)).  Despite Ballard's reliance on alternative legal authority, the arguments based on that authority nonetheless present a "thinly veiled and improper attempt[] to collaterally attack" a conviction and sentence imposed by the Air Force.  *See Stone v. Dep't of Housing & Urb. Dev.*, 859 F. Supp. 2d 59, 63, *id.* n.2, 64 (D.D.C. 2012) (finding that the court lacked subject matter jurisdiction over the plaintiff's request for relief under the Declaratory Judgment Act to vacate his conviction, sentence, and other terms of his plea agreement, because he could raise those claims through a writ of habeas corpus).

*Finally*, and as discussed above in part, the Court also finds that venue in in the District of Columbia is improper.  *See Chatman-Bey*, 864 F.2d at 811–13 ("venue considerations" generally dictate "adjudication of the habeas claim in the jurisdiction where the habeas petitioner is confined.").  Ballard maintains that this District is proper "because the Defendant has an official office in the district of Columbia."  Pet. at 8.  But once again, Ballard's "immediate custodian, not a supervisory official who exercises legal control, is the proper respondent."  *Dillon*, 2022 WL 971087, at *3 (quoting *Padilla*, 542 U.S. at 439) (internal quotation marks omitted)).  "Crediting [Ballard's] argument would allow a prisoner to name 'the State or the Attorney General as a

respondent to a § 2241 petition,' which would conflict with 'statutory language, established practice, and [] precedent.' " *Id.* (quoting *Padilla* at 439–40).   Indeed, the D.C. Circuit has forewarned that courts in this jurisdiction must examine venue carefully to guard against the danger that a litigant might manufacture it in the District of Columbia, merely by virtue of naming a federal agency or officer as a respondent.  *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993); *see also Bartel v. Federal Aviation Admin.*, 617 F. Supp. 190, 199 (D.D.C. 1985) (holding that the location of the federal government or an agency's headquarters office does not necessitate venue in this district).

## IV. CONCLUSION

For the foregoing reasons, the Air Force's Motion to Dismiss is GRANTED and Joseph A. Ballard's Petition for Habeas Corpus pursuant to § 2241 is hereby DENIED.  Petitioner may refile for relief pursuant to 28 U.S.C. § 2241 in the proper jurisdiction and venue.  An Order will be entered contemporaneously with this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date:   November 9, 2022